PORTER, TRUSTEE ET AL. *v.* CAYLOR ET AL.

[No. 17,881.   Filed December 18, 1896.]

BOND.—*Bastardy.*—A bond given by defendant to plaintiff in settlement of a bastardy proceeding, conditioned that the defendant would marry, live with, support and kindly treat the plaintiff as his lawful and wedded wife, is violated by the communication to the plaintiff, shortly after such marriage, of a loathsome disease, causing her much pain, and causing the premature birth of her child.

HUSBAND AND WIFE.— *Cruelty.* — *Desertion.*—When a wife by the cruelty of her husband is driven from their home, the law does not regard this as desertion on her part.

From the Delaware Circuit Court. *Reversed.*

*Gregory & Silverberg,* for appellants.

HOWARD, J.—On July 26, 1893, the bond and mortgage sued on in this case were executed by the appel-

Porter, Trustee, *et al. v.* Caylor *et al.*

lees in favor of Pearl M. Phipps, now the appellant Pearl M. Caylor, wife of the appellee, Harry Caylor. The said Harry Caylor was at the time in jail, awaiting the action of the circuit court upon a charge of bastardy, preferred by the said Pearl M. Phipps, now Caylor. By way of compromise, it was then agreed between the parties that the bastardy suit should be dismissed on condition that said appellee, Caylor, should marry said appellant, Phipps, and that both said appellees should execute to her a bond, secured by mortgage on real estate, the bond to be in the sum of $500.00, liquidated damages, as security that he would enter into said marriage and faithfully keep his vows, particularly binding him to "live with and support and kindly treat the said Pearl M. Phipps as his lawfully wedded wife, for the full term of ten years, unless prevented by death."

In pursuance of said agreement and the execution of the bond and mortgage, the bastardy proceedings were dismissed and the parties became husband and wife. They lived together until September of the same year; soon after which, it is alleged, the conditions of the bond were violated, and this action was brought to recover the damages provided for in the bond and for the foreclosure of the mortgage. The appellant, Porter, appeared for the appellant, Pearl M. Caylor, as trustee and next friend; the record showing that at the time she became pregnant by the act of the appellee, Caylor, as charged, she was as yet but a school girl and not fifteen years of age.

The cause was submitted to the court for trial, and there was a special finding of the facts with conclusions of law. The court found the facts in issue substantially as stated in the complaint: That Pearl M. Phipps, now Caylor, was at the date of the bond and

mortgage unmarried, of the age of fifteen years and living with her parents in the city of Muncie; that she was then pregnant with a bastard child, of which the said Harry Caylor was the father; that he had been arrested and committed to jail on said charge; that the compromise was entered into, by the terms of which the bond and mortgage were executed, the suit dismissed and the parties married; that they lived together until September 1, 1893, when the wife went to her parents' home; that on September 28 she gave birth to the child, which died in a few days; that at the date of the marriage the husband was afflicted with a venereal disease, which, within two weeks thereafter, he communicated to his wife, and from which she suffered continuously until some time after the birth of her child; and that said disease caused the premature birth of said child. The court also found that when the said wife left her husband and returned to the home of her parents, "it was not because of any abuse or mistreatment of said Harry Caylor toward her, but because she was not satisfied with the home and other provisions the said Harry Caylor had made for her." Still other findings, but immaterial to the issues, were made; and the court concluded, as a matter of law, "that the plaintiffs are entitled to take nothing by this suit."

We do not think the conclusions of law were justified by the findings. One of the facts found is an intimation that the wife abandoned her husband; and we presume that it was upon this chiefly that the conclusions of law were based. The finding in question is rather a conclusion of fact, and is itself inconsistent with the facts in issue and expressly found by the court. Two weeks after their marriage the husband communicated a loathsome disease to his wife, from which she continuously suffered thereafter. The

enormity of this conjugal offense was intensified by the circumstance that the wife was then in the delicate state caused by approaching maternity, to say nothing of her being but a child herself; and if ever the condition of the bond, that the husband should "support and kindly treat" his wife, should apply, it was then, when she was about to become the mother of his child.

"The husband's cruelty," says Mr. Bishop, Marriage and Divorce (6th ed.), section 741, "is aggravated by the woman's being in pregnancy. Also, by her being of advanced age; [or, we might add, of tender age], for 'there may be relative cruelty, and what is tolerable by one may not be by another.'" Yet it is quite impossible to conceive that the particular cruelty indulged in in this case could be tolerable by any one. In this case, too, not only the suffering of the mother, but the premature birth and speedy death of the child were direct results of this cruelty. The wife did not desert the husband. His conduct drove her forth.

As said in the vigorous language of Judge Lotz, in *Carr* v. *Carr*, 6 Ind. App. 377, "Although the evidence in this case shows that the wife left the defendant, it was under such circumstances that made him, and not her, the deserter." And the learned judge continues: "His conduct was not only vile, but it was infamous. It was bad enough for him to violate his marital vows, but when followed up by inoculating the wife with a loathsome disease, the depths of infamy had been sounded. The law does not require that the wife shall abase herself to the extent of condoning the adulterous conduct of the husband, much less is she required to jeopardize her health and life in order that she may receive food, raiment and shelter from his iniquitous hand. She is entitled to enjoy his good fortunes, and bound to share his misfortunes, but she

is not required to share his ignominy and shame, or to imperil her life and health on account of his wrong-doing."

"For a husband knowingly to communicate venereal disease to his wife," says Mr. Bishop, in the work already cited, section 735, "is adequate legal cruelty; and, in aid of the necessary proofs of knowledge, the presumption will be, that he was aware of his own diseased condition and the danger of infection." See also definition of cruelty as to husband and wife, as quoted from the same text writer by Judge Worden in *Small* v. *Small*, 57 Ind. 568.

That the conditions of the bond in suit were violated, and that the appellants were entitled to recover, there can be no doubt. A case in form and substance much like the case at bar, and in which the acts of the husband, in the violation of the conditions of the bond given his wife, were less reprehensible, was that of *Stanley* v. *Montgomery*, 102 Ind. 102, appealed for the second time and decided in favor of the wife in *Stanley* v. *Stanley*, 112 Ind. 143.

The judgment is reversed, with instructions to the court to restate its conclusions of law and to enter judgment for the appellants.